IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SID CHILDRESS,

    Plaintiff,

v.                                                                                         1:18-CV-00455 LF-KBM

JAMES STEVEN DEERING d/b/a
CENTRA XYZ, LLC,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendant James Steven Deering d/b/a Centra XYZ, LLC's Motion to Dismiss, filed on May 21, 2018. Doc. 6. Plaintiff Sid Childress filed his response on May 29, 2018. Doc. 10. Deering filed his reply on June 12, 2018. Doc. 13. The parties consented to my entering final judgment in this case. Docs. 9, 11, 12. Having read the submissions of the parties and the relevant law, and being otherwise fully advised, the Court finds that the motion is well-taken and will GRANT it.

    **I.**     **Background Facts and Procedural Posture**

This case arises out of phone calls that plaintiff Sid Childress received on his cell phone from (951) 224-3387 and (949) 656-7696. Doc. 1-2 (Complaint) ¶ 18. Childress's caller ID showed that these calls originated from Riverside, California. *Id.* When Childress answered calls from these two numbers, "on almost all of them he immediately experienced the tell-tale indicators of an illegal automatic dialing system ('auto-dialer' or [']ATDS')—a few seconds of silence or 'dead air' and strange noises before a live telemarketer came on the line." *Id.* ¶ 19.

The live telemarketers tried to interest Childress in having his student loan debt refinanced, even though Childress did not have student loan debt. *Id.* ¶¶ 20, 21.

The live telemarketer always refused to adequately identify him or herself or the "sponsor" of the call. *Id.* ¶¶ 22, 25. If Childress persisted in questioning the telemarketer about on whose behalf the telemarketer was calling, the telemarketer would either lie and give Childress the name of a fake or non-existent business, or hang up. *Id.* ¶ 23. On September 28, 2017, Childress received two calls from (949) 656-7696. *Id.* ¶ 28. The first call was at 10:40 a.m. *Id.* In that call, the telemarketer identified himself as "Vincent." *Id.* Childress told Vincent that his (Childress's) phone number was on the National Do-Not-Call Registry, that Childress would like his number placed on the telemarketer's internal do-not-call list, and that he never wanted to receive another marketing call again. *Id.* "Vincent" hung up, but another telemarketer called from the same phone number an hour and four minutes later. *Id.* ¶ 29. According to the Childress's complaint, he continued to receive telemarketing calls from both (949) 656-7696 and (951) 224-3387 after September 28, 2017. *Id.* ¶ 31.

Childress asserts that his cell phone number has been on the National Do-Not-Call Registry at all relevant times, and that he has never consented to being auto-dialed or robo-called. *Id.* ¶¶ 37, 41. Childress also asserts that he has never established any business relationship with defendant James Stevens Deering doing business as Centra XYZ, LLC. *Id.* ¶ 44. Childress asserts in his complaint that the calls made to him from (949) 656-7696 and (951) 224-3387 violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b), and that the violations were willful. *Id.* ¶¶ 55−59. He also asserts state common law claims and claims under New Mexico's Unfair Practices Act. *Id.* ¶¶ 60−67. Childress asserts in his

complaint that Deering is liable for the telephone calls either because Deering actually made or initiated the calls himself, or because:

a) Deering authorized them, or

b) Deering directly or indirectly controlled the people who actually made the calls, or

c) Deering allowed telemarketers to access information and operating systems with Deering's control for the purpose of selling goods and services, or

d) Deering allowed the telemarketers to enter consumer information into his sales, dialing or operational systems, or

e) Deering approved, wrote, or reviewed the telemarketing sales script, or

f) Deering reasonably should have known that the actual telemarketers were violating the TCPA, and Deering failed to take effective steps within his power to require compliance with the TCPA.

*Id.* ¶¶ 35, 36.

In his motion to dismiss, Deering asserts that this Court lacks personal jurisdiction over him. Doc. 6 at 2−5. By affidavit, Deering testifies that he is a resident of California and has lived in California for more than a decade. Doc. 5 ¶ 2. He states that he has never been to New Mexico, he has no personal or real property in New Mexico, and he has no offices, equipment, bank accounts, investments, employees, representatives or agents in New Mexico. *Id.* ¶ 4. He further states that he has never solicited or transacted business in New Mexico, and that he has never employed any person or authorized any agent to act on his behalf in New Mexico. *Id.* ¶ 6. He also has never entered into any contract or agreement for business transacted in New Mexico. *Id.* ¶ 7.

Deering further testifies by affidavit that he has never spoken to Sid Childress by phone or in any other way. *Id.* ¶ 8. He also states that he has never transacted business "doing business as" Centra XYZ, LLC, nor has he ever registered to do so as required under California law. *Id.* ¶ 9. He also states that he did not participate in, set-up, direct, control, or otherwise authorize the telephone calls that Childress describes in his complaint. *Id.* ¶ 10. He further testifies that he never employed anyone else to make outbound telemarketing calls on his behalf, nor has he ever made outbound telemarketing calls like the ones that Childress alleges he received. *Id.* ¶ 11.

Childress attached his own affidavit to his response to Deering's motion. Doc. 10-1. In his affidavit, Childress further describes some of the phone calls he received from (949) 656-7696 and (951) 224-3387, and he attaches his cell phone records which document some of these calls. *See* Doc. 10-1 ¶ 3 (affidavit); Doc. 10-1 at 5−6 (cell phone records).[1] Childress states that the call he received on September 28, 2017 at 11:44 a.m. from (949) 656-7696 was from a telemarketer named "Heather." Doc. 10-1 ¶ 3; *see also* Doc. 10-1 at 5. The call he received at 1:26 p.m. that same day from (951) 224-3387 was from a telemarketer whose voice was different from Heather's. *Id.* Childress told each of these two telemarketers the same thing he had told "Vincent" earlier in the day, that is, that his phone number was on the National Do-Not-Call Registry, that Childress would like his number placed on the telemarketer's internal do-not-call list, and that he never wanted to receive another marketing call again. *Id.* Childress continued to receive calls from (951) 224-3387 after September 28, 2017, and sometimes he would answer the call, then hang up so that the call would be documented on his bill. Doc. 10-1 ¶ 7; *see also* Doc. 10-1 at 5−6.

---

[1] The page numbers refer to the page numbers assigned by CM/ECF in the upper right-hand corner of the document, not the handwritten page numbers in the lower right-hand corner.

Childress obtained subscriber information for telephone number (951) 224-3387 from AT&T. Doc. 10-1 ¶ 9; Doc. 10-1 at 7−8. The subscriber information, which was dated November 16, 2017, shows that the financially liable party for (951) 224-3387 is Centra XYZ LLC, with an address of 21555 Campos Road in Perris, California. Doc. 10-1 at 7−8. The user is listed as Ina Brinkman, with the same address. *Id.* at 8. The subscriber information further shows that Centra XYZ LLC had been a customer since May 18, 2017, and that the service for telephone number (951) 224-3387 started on June 15, 2017. *Id.* Childress did not provide any subscriber information for (949) 656-7696. *See generally* Doc. 10-1.

Childress also obtained a record from the Colorado Secretary of State that shows that on August 30, 2017, James Stevens Deering of 21555 Campos Road in Perris, California caused a periodic report to be filed on behalf of Centra XYZ, LLC, a Colorado Limited Liability Company. Doc. 10-1 ¶ 10; Doc. 10-1 at 9−10. These documents are readily available on the Colorado Secretary of State's website, and the Court was able to obtain certified copies of all the documents filed on behalf of Centra XYZ, LLC through January 23, 2019. *See* Exh. 1 (attached). From these documents, it is apparent that James S. Deering formed the limited liability company on August 30, 2016. *Id.* The address listed for Mr. Deering is 21555 Campos Road in Perris, California. *Id.* The last document filed with the Colorado Secretary of State was the periodic report attached to Childress's affidavit. *See id.* Childress further notes in his affidavit that the summons and complaint in this case were delivered to Mr. Deering at 21555 Campos Road in Perris, California. Doc. 10-1 ¶ 10; *see also* Doc. 1-2 at 31−32 (state court order authorizing alternate service of process by posting the summons and complaint on a conspicuous place at 21555 Campos Road in Perris, California); Doc. 1 ¶ 3 (Deering acknowledged that he learned about the complaint on April 12, 2018 because it was posted on his property).

Also attached to Childress's affidavit is a LinkedIn page that shows a James Deering as Executive Director of Centra Corporation from January 2011 to January 2014. Doc. 10-1 at 11−12. There is no indication as to how Childress obtained this document, and as Deering argues in his reply, the document is inadmissible. *See* Doc. 13 at 5−6. The Court will not consider this document.[2]

The final document attached to Childress's affidavit is a transcript of a phone message that Childress received from phone number (951) 296-3888 on an unknown date. Doc. 10-1 at 13. Although the Court is not convinced that this transcript is admissible, the substance of the phone message was that an attorney named Robert Rosenstein said that he represented Centra XYZ LLC, and that he would accept service on behalf of Centra XYZ LLC. *Id.* Mr. Rosenstein further represented that "[t]he call that was made to you first of all was not a robo-call it was by a third-party that was using a cell-phone that was being maintained by my client as a courtesy." *Id.* Mr. Rosenstein did not further identify this call, or the phone number from which the call was made, in his message. *See id.*

**II. Legal Standard**

A. Motions to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2)

When faced with a motion to dismiss for lack of jurisdiction under FED. R. CIV. P. 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over an out-of-state defendant. *See Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir.

---

[2] Even if the Court were to consider this document, it has no persuasive value. It shows that someone named James Deering was the Executive Directive of something called Centra Corporation from January 2011 until January 2014, more than three years before the phone calls at issue in the complaint. *See* Doc. 10-1 at 11. It also lists numerous skills that "James is also good at," including several marketing related skills, but it does nothing to show that Deering is the person who made the calls at issue in Childress's complaint, or that Deering caused the calls to be made. *See id*. at 11−12.

6

1996). At this point in the litigation, Childress need only make a prima facie showing of jurisdiction to defeat Deering's motion to dismiss. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). If the facts in the complaint are controverted, Childress may make the required showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction. *See OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). All factual disputes must be resolved in the plaintiff's favor. *Wenz*, 55 F.3d at 1505. The Court need only accept as true well-pled facts, i.e., facts that are plausible, non-conclusory, and non-speculative. *Id.*

      B. <u>Personal Jurisdiction and Due Process</u>

Personal jurisdiction may exist in two ways: 1) general jurisdiction and/or 2) specific jurisdiction. A court has general jurisdiction over a defendant when the defendant's contacts with a state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). In contrast, "specific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citation omitted). Because Childress does not appear to assert the existence of general jurisdiction, *see* Doc. 10 at 3, 14−19, the Court will address whether it has specific jurisdiction over Deering.

Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). If the "controversy is related to or 'arises out of' [defendant Deering's] contacts with the forum," specific

7

jurisdiction exists. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citation omitted). Determining whether specific jurisdiction exists involves two steps. First, the Court must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Second, if the defendant's actions create sufficient minimum contacts, the Court then must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987); *see also OMI Holdings, Inc.*, 149 F.3d at 1090–91.

A defendant has sufficient minimum contacts with the forum state to support the exercise of specific jurisdiction if two requirements are met: (1) "the defendant [has] purposefully directed his activities at residents of the forum," and (2) "the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.' " *OMI Holdings*, 149 F.3d at 1091 (citations omitted) (emphasis in original).

### III.  Discussion

Childress argues that "[i]t is well established that even a single letter or phone call into New Mexico can be sufficient basis for specific personal jurisdiction, even in general tort or contract actions that do not involve privacy or harassment law." Doc. 10 at 1 (citing *Customwood Mfg., Inc. v. Downey Const. Co., Inc.*, 1984-NMSC-115, 102 N.M. 56, 691 P.2d 57).[3] The problem here, however, is that Childress has not made a prima facie showing that

---

[3] It is important to note that although the New Mexico Supreme Court acknowledged in *Customwood* "that a single transaction of business within this State can be sufficient to subject a nonresident defendant to the jurisdiction of New Mexico courts," it held that the out-of-state defendant's mailing of a purchase order to the plaintiff in New Mexico was insufficient contact

8

Deering *himself* called Childress, or caused someone else to call him from one of the two phone numbers identified in the complaint. With respect to (949) 656-7696, Childress says that the caller identified himself as "Vincent," but never disclosed on whose behalf he was calling. In his affidavit, Deering says that he has never spoken to Childress by phone, nor did he ever "participate in, set-up, direct, control or otherwise authorize the alleged telephone calls" to Childress. Doc. 5 ¶¶ 8, 10. Deering further states that he has never made outbound telemarketing calls like the ones Childress describes in his complaint, nor has he ever employed anyone to make such calls for him. *Id.* ¶ 11. Childress says nothing in his affidavit that contradicts these statements. *See generally* Doc. 10-1. Thus, Childress has not made a prima facie showing that Deering himself had anything to do with calls from (949) 656-7696.

Analysis of the calls from (951) 224-3387 is a little more complicated. With respect to that number, one caller identified herself as "Heather," and there was another caller who had a voice different from "Heather's" voice. But again, nothing about the calls themselves linked the caller to Deering. The subscriber information shows that the user of this phone number is someone named Ina Brinkman with an address that is the same as Deering's address. The financially liable party is Centra XYZ LLC, which according to the documents from the Colorado Secretary of State, is a duly registered limited liability corporation in Colorado, not a "d/b/a" or alias of Deering.

In this case, Childress has sued Deering personally, and identified Centra XYZ LLC as a d/b/a of Deering. *See* Doc. 1-2 ¶¶ 2, 3. "The designation 'd/b/a' means 'doing business as' but

---

to establish personal jurisdiction over the defendant. *Customwood Mfg., Inc.*, 1984-NMSC-115, ¶¶ 5−7, 102 N.M. at 57−58, 691 P.2d at 58−59. Thus, even if Childress could make a prima facie case that Deering *himself* called Childress, or caused someone to call him, that would not necessarily end the inquiry.

9

is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business. . . . The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner." *Providence Washington Ins. Co. v. Valley Forge Ins. Co.*, 42 Cal. App. 4th 1194, 1200, 50 Cal. Rptr. 2d 192, 194−95 (Cal. Ct. App. 1996) (internal quotation marks and citation omitted). A limited liability company, on the other hand, is a separate business entity that is legally distinct from its members. *See* C. Bishop & D. Kleinberger, LIMITED LIABILITY COMPANIES: TAX AND BUSINESS LAW ¶ 6.01[1][a] (2018). "[E]ach member in a limited liability company (LLC) enjoys a corporate-like liability shield." *See id*. "The function of the liability shield is to sever the connection between member status and personal responsibility for the obligations of the entity." *Id*. ¶ 6.01[1][b]. "An LLC member risks the amount the member invested in the enterprise but otherwise enjoys limited liability." *Id*. ¶ 6.01[1][a] (internal quotation marks omitted).

Thus, although the Court is required to resolve all disputes in the parties' affidavits in favor of Childress, Childress has not alleged any specific facts that show that Deering himself called Childress, or caused someone to call Childress from (951) 224-3387. The AT&T subscriber information shows that this phone number is associated with Deering's address, but neither the financially responsible party nor the user is Deering himself. Centra XYZ, LLC is a Colorado Limited Liability Company and therefore a separate legal entity, not a d/b/a of Deering. And there is no information regarding the identity of the members of Centra XYZ, LLC. Further, the lawyer who called Childress specifically identified himself as representing Centra XYZ, LLC, not Deering. Thus, anything the lawyer said cannot be attributed to Deering. The fact that Deering's address is associated with the phone number from which Childress received

calls is insufficient to contradict Deering's affidavit. After considering the pleadings and affidavits in the light most favorable to Childress, the Court finds that Childress has failed to demonstrate that Deering has sufficient minimum contacts with New Mexico for the Court to exercise jurisdiction over him.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that defendant James Steven Deering's Motion to Dismiss (Doc. 6) is GRANTED. Plaintiff Sid Childress's Complaint for Violations of the Telephone Consumer Protection Act, the Unfair Practices Act and Torts is DISMISSED without prejudice.

_____
Laura Fashing
United States Magistrate Judge
  Presiding by Consent